

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

June 19, 1986

Honorable Chet Brooks
Chairman
Health and Human Resources
   Committee
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No. JM-500
(corrected 7-14-86)
Re:  Proper location of a Class D
pharmacy

Dear Senator Brooks:

You ask several questions regarding the statutory construction of the Texas Pharmacy Act. In particular, you ask about the Board of Pharmacy's authority to promulgate rules governing Class D pharmacies. To put your question in context, we will first set out the statutes governing Class D pharmacies. Since 1981 the Texas Pharmacy Act has provided for four different licensing classifications for pharmacies:

'Class A pharmacy license' or 'community pharmacy license' means a license issued to a pharmacy dispensing drugs or devices to the general public pursuant to a prescription drug order.

'Class B pharmacy license' or 'nuclear pharmacy license' means a license issued to a pharmacy dispensing or providing radioactive drugs or devices for administration to an ultimate user.

'Class C pharmacy license' or 'institutional pharmacy license' means a license issued to a pharmacy located in a hospital or other in-patient facility that is licensed under the Texas Hospital Licensing Law (Article 4437f, Vernon's Texas Civil Statutes) or Chapter 6, Texas Mental Health Code (Article 5547-1 et seq., Vernon's Texas Civil Statutes), or to a pharmacy located in a hospital maintained or operated by the state.

'Class D pharmacy license' or 'clinic pharmacy license' means a license issued to a pharmacy

> dispensing a limited type of drugs or devices pursuant to a prescription drug order.

V.T.C.S. art. 4542a-1, §5(5)--(8).

The Pharmacy Act requires all pharmacies to be under the supervision of a pharmacist. V.T.C.S. art. 4542a-1, §29(c). Class A pharmacies, Class B pharmacies, and Class C pharmacies in institutions with more than 100 beds must be under the continuous on-site supervision of a pharmacist. Id. A Class D pharmacy, in contrast, must be under the continuous supervision of a pharmacist "whose services shall be required according to the needs of the pharmacy." Id. In other words, the supervising pharmacist of a Class D pharmacy need not always be on-site.

The State Board of Pharmacy has authority to adopt rules for the proper administration and enforcement of the Pharmacy Act. Art. 4542a-1, §16(a). Also, the act specifically provides that the board shall have "discretion to determine under which classifications a pharmacy applicant may be licensed." Art. 4542a-1, §29(e).

Your first question about the regulation of Class D pharmacies is:

> 1. Does the Texas Board of Pharmacy have the authority to change the definition of 'limited type of drug' in a manner which would preclude an outpatient clinic from being eligible for a Class D permit if that clinic limits the drugs it dispenses to only dangerous drugs (i.e., no controlled substances) that are administered or provided only to patients of the clinic (i.e., not to the general public)?

A brief you submitted argues that the Board of Pharmacy must grant a Class D license to a pharmacy seeking such a license as long as that pharmacy limits its formulary to dangerous drugs. We think that the legislature intended a Class D pharmacy to be more restricted in the range of drugs it dispenses than your brief urges.

If the legislature had intended that any pharmacy that limits its formulary to "dangerous drugs" must be licensed as a Class D pharmacy, it could have easily done so. The Pharmacy Act defines "dangerous drug." V.T.C.S. art. 4542a-1, V.T.C.S. §5(12). Therefore, it would have been a simple matter for the legislature to define a Class D pharmacy as one that dispenses only "dangerous drugs." Instead, the legislature described a Class D pharmacy as one that dispenses "a limited type of drugs or devices." Art. 4542a-1, §5(8).

The briefs submitted in response to your question show considerable disagreement about what the legislature intended a Class D pharmacy to be. We think that the legislature's obvious intent was to allow clinics that provide a limited range of medical services to maintain a pharmacy with a formulary that meets the limited pharmaceutical needs of the clinic's patients. We think that this intent is clear when all the provisions in the Pharmacy Act that refer to a Class D pharmacy are read together. First, a Class D pharmacy is a "clinic" pharmacy that dispenses a "limited type of drugs." Art. 4542a-1, §5(8). Second, a clinic pharmacy need not be under the continuous on-site supervision of a pharmacist. Third, the Pharmacy Act indicates that a clinic pharmacy does not serve the general public. See Art. 4542a-1, §30(h). Finally, the legislature made clear that a clinic pharmacy would be somewhere other than a doctor's office, but nonetheless somewhere at which a doctor could leave standing orders. See art. 4542a-1, §33(a) (allowing a physician to delegate the administering or provision of dangerous drugs in the physician's office); art. 4542a-1, §33(b) (allowing a physician to delegate the administering or provision of dangerous drugs if such provision is provided through a Class D pharmacy). Taken together, these provisions indicate that the legislature intended a Class D pharmacy to be located at a clinic that provided medical services so limited in scope that its patients could be adequately served by a pharmacy that does not require the constant presence and expertise of a licensed pharmacist. The legislature left it to the board's discretion to determine which clinics are in fact so limited in scope that the needs of their patients can be met by a Class D pharmacy.

In conclusion, it would be consistent with both the statutory definition of "Class D pharmacy" and also with the purpose of a Class D pharmacy to define "limited type of drugs" in a way that would preclude an applicant from obtaining a Class D license if the only limit on its formulary would be that it dispensed only "dangerous drugs."

Your second question is:

2. May a Class D pharmacy be located on the premises of a physician's practice located in a facility commonly referred to as a minor emergency center?

This question seeks answers to factual matters. "Minor emergency center" has no legal definition. Whether or not the services provided by such a facility are so limited that a Class D pharmacy could be located on the premises is a matter within the discretion of the Board of Pharmacy.

## S U M M A R Y

A Class D pharmacy is one with a formulary that is limited to serving the purposes of a clinic that provides limited medical services. The Board of Pharmacy has discretion to determine which pharmacies can be licensed as Class D pharmacies.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General